*1017-15    1018-15    1019-15*

Nos. PD-1017-15, PD-1018-15, PD-1019-15    ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

ANDRIA MARIE STANLEY
Petitioner

vs.

THE STATE OF TEXAS
Respondent

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 22 2015

Abel Acosta, Clerk

Petition in Cause Nos. D-1-DC 12-300267,
D-1-DC 12-300754, D-1-DC 12-300755
in the 390th District Court of
Travis County, Texas and

In the Third District Court
Of Appeals at Austin

FILED IN
COURT OF CRIMINAL APPEALS

OCT 22 2015

Abel Acosta, Clerk

## PETITION FOR DISCRETIONARY REVIEW

Submitted by:

Andria M. Stanley
Pro Se
T.D.C.J.# 01861816
Mountain View Unit
2305 Ransom Road
Gatesville, Texas 76528

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Index of Authorities ............................................................................. 3-5

Statement Regarding Oral Argument ................................................. 6

Statement of the Case ......................................................................... 6

Statement of Procedural History ....................................................... 6

Reasons for Review ............................................................................. 7

Ground for Review One ................................................................... 8-14

The Court of Appeals erred in finding that the prejudicial and inflammatory evidence erroneously admitted by the trial court was harmless, of the Appellant's admission to Aggravated Assault on the complainant in an agreed protective order because Appellant's admission was obtained through Ineffective Assistance of Counsel.

Ground for Review Two ................................................................ 15-17

The Court of Appeals erred in holding that the Appellant was not harmed by a denial of a requested unanimity instruction on the Burglary of a Habitation charge because the general verdict led to a potential jeopardy violation between the burglary conviction and substantive offenses.

Prayer for Relief ................................................................................ 18

Certificate of Service ....................................................................... 19

Certificate of Compliance ................................................................ 19

Appendix ........................................................................................... 20

# INDEX OF AUTHORITIES

Constitutions:

U.S. Const., Amend. 5 ...........................................................................................11

U.S. Const., Amend. 6 ...........................................................................................14

Cases:

*Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App. 1984) ........................................ 16

*Arizona v. Fulminante*, 499 U.S. 279 (1991) ........................................................ 12

*Arline v. State*, 721 S.W.2d 348 (Tex.Cr.App. 1986) ............................................ 16

*Ex parte Butler*, 522 S.W.2d 196 (Tex. 1975) ......................................................11

*Ex parte Moody*, 991 S.W.2d 856 (Tex.Cr.App. 1999) ......................................... 13

*Ex parte Sanchez*, 703 S.W.2d 955 (Tex.1986)..................................................... 10

*Ex parte Strickland*, 724 S.W.2d 132 (Tex.App. - Eastland 1987) ....................... 10

*Ex parte Welborn*, 785 S.W.2d 391 (Tex.Cr.App. 1990) ......................................11

*Francis v. State*, 36 S.W.3d 121 (Tex.Cr.App. 2000) ........................................... 15

*Frangias v. State*, 450 S.W.3d 125 (Tex.Crim.App. 2013) ................................... 10

*Goodspeed v. State*, 187 S.W.3d (Tex.Crim.App. 2005) ....................................... 10

*Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App. 1989) ........................................... 12

*Hemmingway v. State*, 483 So.2d 1335 (Miss. 1986) ........................................... 12

*Hill v. Lockhart*, 474 U.S. 52 (1986) .................................................................... 13

*Holloway v. State*, 780 S.W.2d 787 (Tex.Cr.App. 1989) ........................................ 14

*In re Butler*, 45 S.W.3d 268 (Tex.App.-Houston [1st Dist.] 2001) ........................... 10

*In re Marks*, 365 S.W.3d 843 (Tex.App.- Ft. Worth 2012) ................................... 10

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) ...........................................8

*Langs v. State*, 183 S.W.3d 680 (Tex.Cr.App. 2006) ....................................... 16

*LaPoint v. State*, 750 S.W.2d 180 (Tex.Cr.App. 1986) ..................................... 17

*Maness v. Meyers*, 419 U.S. 449 (1975) ................................................11

*Massiah v. United States*, 377 U.S. 201 (1966) ......................................... 14

*McCarthy v. Ardstein*, 266 U.S. 34 (1924) ..............................................11

*Morales v. State*, 910 S.W.2d 642 (Tex.App. Beaumont 1995) ........................... 13

*Murphy v. State*, 44 S.W.3d 656 (Tex.App.- Austin 2001) ................................. 17

*Nava v. State*, 415 S.W.3d 289 (Tex.Crim.App.2013) ....................................9

*Rowland v. Herren*, 03-07-00247-CV

    (Tex.App. – Austin 2-19-2010) (Unpublished) ................................... 10

*Snowden v. State*, 353 S.W.3d 815 (Tex.Cr.App 2011) .................................. 12

*Strickland v. Washington*, 466 U.S. 668 (1986) ......................................8-9, 14

*Texas Dep't of Public Safety Officers Ass'n v. Denton*,

    897 S.W.2d 757 (Tex.1995) ..............................................11

## Statutes, Codes and Rules:

Tex.Code Crim.Pro. 36.15..................................................................... 15

Tex.Penal Code § 30.02(a)(1) ........................................................ 15-16

Tex.Penal Code § 30.02(a)(3) ........................................................ 15-17

Tex.R.Evid. Rule 801(e)(2) ...............................................................11

Tex.R.Evid. Rule 803(24) ................................................................11

## STATEMENT REGARDING ORAL ARGUMENT

In the event this petition is granted, the Petitioner requests oral argument. Argument would assist the court because this case presents novel issues this court has not previously addressed, and the issues raised are issues of first impression that could be better discussed in the context of oral argument.

## STATEMENT OF THE CASE

This case concerns a conviction of four felony offenses—two counts of family violence aggravated assault, aggravated kidnapping, and burglary of a habitation, in which Appellant's admission in an agreed protective order was obtained through Ineffective Assistance of Counsel. It also concerns the issue of whether a charge submitted to the jury allowing a conviction on less than an unanimous verdict constitutes a violation of the Double Jeopardy Clause.

## STATEMENT OF PROCEDURAL HISTORY

(1) Date of opinion from Court of Appeals:      July 30, 2015
(2) Date of Motion for Rehearing:               None was filed.
(3) Date Motion for Rehearing Disposed:         N/A

## GROUNDS FOR REVIEW

1. The admission of an agreed protective order in which Appellant was persuaded by counsel to agree to findings that she had committed the acts for which she would eventually be prosecuted, resulted from Ineffective Assistance of Counsel at the contempt hearing. Because the lower courts refused to find any harm in the admission of the protective order, the conviction must be overturned.

2. The Court of Appeals erred in finding that Appellant's requested unanimity instruction for the burglary charge led to double jeopardy violation between the burglary conviction and substantive offenses.

## ARGUMENT

**1. The Court of Appeals erred in overruling Appellant's objection to the admission of the protective order on the basis of Ineffective Assistance of Counsel. Furthermore, erring in holding that the admission of the agreed protective order was harmless beyond a reasonable doubt.**

At Appellant's trial, the state offered a copy of an agreed protective order from a family law proceeding involving Appellant and her ex-husband, which contained a finding that Appellant caused "serious bodily injury to [Witt]." Appellant objects to the admission of the protective order asserting that Appellant's attorney had rendered ineffective assistance of counsel by advising her to agree to the protective order—and the findings of family violence.

The record before the Court of Appeals reflected a strategy which was patently unreasonable because it was facially inconsistent—counseling Appellant to admit to criminal conduct which would be the crux of a pending felony charge in order to avoid discussion of "ancillary" matters—and clearly reflects counsel's misunderstanding of precedent on the scope of the privilege against self-incrimination. Was the challenged action sound strategy? There exists a reasonable probability that, but for counsel's unprofessional errors, result of proceeding would have been different. *Kimmelman,* 477 U.S. at 384, 106 S.Ct. 2574.

In *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court articulates a two-prong test to be used when analyzing a claim of Ineffective Assistance of Counsel. To have a conviction

8

reversed on the grounds of Ineffective Assistance of Counsel an Appellant must show that:

1) Counsels representation fell below an objective standard of reasonableness and
2) The deficient performance prejudiced the appellant.

Is a deficiency in attorney performance not a general requirement that the defendant affirmatively proves prejudice?

The basic or significant part of Appellant's complaint is that counsel in her family law contempt hearing was deficient for counseling her to agree, in essence, to make a written admission of having committed aggravated assault as part of a strategy in avoiding having to testify to extraneous and ancillary matters which *might* have been admissible in a pending felony trial.

The court states that the Appellant must first demonstrate that counsel's performance fell below an "objective standard of reasonableness under prevailing professional norms... " *Strickland,* 466 U.S. at 687-88; *Nava,* 415 S.W.3d at 307. Then, "that the result of the proceeding would have been different absent counsel's deficient performance." *Strickland,* 466 U.S. at 694; *Nava,* 415 S.W.3d at 308.

There is no question under *Strickland* that Appellant had the right to the effective assistance of counsel at her contempt hearing, even though it pertained to a civil case. Texas law provides that because contempt proceedings in family law involve the possibility of incarceration, the right to the assistance of counsel

extends to family law enforcement proceedings. *See, Ex parte Sanchez,* 703 S.W.2d 955, 957 (Tex. 1986); *in re Marks,* 365 S.W.3d 843, 845 (Tex.App. - Ft. Worth 2012); *in re Butler,* 45 S.W.3d 268, 271 (Tex.App. - Houston [1st Dist.] 2001); *ex parte Strickland,* 724 S.W.2d 132, 133-134 (Tex.App. – Eastland, 1987); *and, Rowland v. Herren,* 03-07-00247-CV (Tex.App. - Austin 2-19-2010) (Unpublished).

The Court of Appeals cites *Frangias v. State,* 450 S.W.3d 125,136 (Tex.Crim.App. 2013) ("[U]nless there is a record sufficient to demonstrate that counsels conduct was not the product of an informed strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.") (quoting *Goodspeed,* 187 S.W.3d at 392). This case is distinct from those typical cases in which claim of ineffective assistance of counsel is raised, and rejected, on direct appeal for lack of a sufficient record. To the contrary, the record of attorney Trumpler's strategy was developed, by the State, during the hearing outside the jury's presence. Trumpler's strategy is unconvincing. First, it is disinguous to label Trumpler's advice as "strategic". Though claiming to be furthering his strategy of protecting appellant from an impending charge of Aggravated Assault, Trumpler persuaded the appellant to sign the protective order, which was admissible against her in the criminal trial as a

10

statement against interest. Tex.R.Evid.Rule 803 (24), as well as a statement by a party opponent, Rule 801 (e)(2). This created admissible evidence against her, something that any attorney familiar with the Rules of Evidence would have recognized. Trumpler's decision to elicit an admission from appellant might have been "strategy" under a broad understanding of the term, but it could not be considered sound or objectively reasonable.

The Court of Appeals incorrectly argues against counsel's testimony betraying a misunderstanding of the scope of the Fifth Amendment privilege. A party in a civil proceeding unmistakably retains a Fifth Amendment privilege against self-incrimination. *Maness v. Meyers,* 419 U.S. 449, 464 (1975) (Fifth Amendment may be asserted in any proceeding, civil or criminal, administrative or judicial); *Texas Dep't of Public Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex.1995); *and, ex parte Butler,* 522 S.W.29 196, 198 (Tex. 1975). In civil cases, the privilege against self-incrimination may be asserted "wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy v. Ardstein*, 266 U.S. 34, 40 (1924); *Denton,* 897 S.W.2d at 760. If Trumpler were unaware of appellant's continuing Fifth Amendment privilege even to ancillary incriminating matters, then his strategy was executed without a sufficient understanding of the law. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Cr.App.1990).

11

The Court of Appeals incorrectly finds that the error is harmless. In considering the potential prejudice, the court must consider a wide array of factors, including the "nature of the error … the probable implications of the error, and the weight of the jury would have likely assigned to it in the course of its deliberations." *Snowden*. The "appellate court should not determine the harmfulness of an error simply by examining whether there exists overwhelming evidence to support the defendant's guilt." *Harris*, 990 S.W.2d 568, 587; *see also Snowden 353 S.W.3d at 819* (discussing *Harris*).

The Court of Appeals fails to acknowledge that the admission into evidence of appellant's *admission to assaulting the complainant* plainly had a prejudicial influence upon the jury simply by nature of the error. "[A] confession is like no other evidence." *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991). As one State appellate court has dryly noted, "Confessions *tend* to have an adverse effect on defendants in criminal prosecutions." *Hemmingway v. State*, 483 So.2d 1335, 1336 (Miss. 1986) (emphasis added).

The Court of Appeals wrongly speculated that "counsels advice at the protective order hearing was the product of an informed and strategic and tactical decision which appellant agreed with and followed at the time but later criticized in a self-serving attempt to exclude her admission. The lower court is trying to be convincing that the appellant voluntarily and knowingly agreed knowing the harm

12

of such an admissible document.

The circumstances are closest by analogy to claims in which deficient representation induces a defendant to waive the right to trial and plead guilty. *See and compare, Hill v. Lockhart,* 474 U.S. 52, 58-59 (1986); *and, Ex parte Moody,* 991 S.W.2d 856, 858 (Tex.Cr.App. 1999). Under this type of ineffectiveness claim, the prejudice inquiry is whether there is a reasonable probability that the defendant would not have waived the right in the absence of counsel's recommendation. *Moody,* 991 S.W.2d at 858. Where a guilty plea based upon erroneous advice of counsel is not made "voluntarily and knowingly". *Morales v. State,* 910 S.W.2d 642 (Tex.App. Beaumont 1995).

The introduction of appellant's admission likely had a destructive influence on the jury because it directly conflicted with her defensive theory at trial, that she had met with her husband at his home to discuss the custody dispute over their children, Witt became violent and a struggle ensued, during which both were injured before appellant could escape to seek medical attention. Appellant contested and disputed Witt's version of events, which were a fabrication for his own assault upon her in which Witt beat her so severely that the metal of the revolver had twisted. Witt's version of events left considerable room for the jury to have doubted his veracity, including but not limited to the vast discrepancy between Witt (6'1") and appellant (5'4", 120 lbs), and Witt's super-human ability

13

to break free of his multiple claims of bindings (zip ties, sheets, blankets, *and* plastic wrap).

In respect to the Court of Appeals, the issue before the court is novel, of an issue with no found precedent in which a comparable situation is addressed. Where, as a result of counsels deficient advice in a different proceeding, a defendant provides an inculpatory statement subsequently used against her at trial on the merits. Granting this petition could assist in an issue of importance to the jurisprudence of the State. Appellant would suggest that a full analysis under *Strickland* would be inappropriate because *Strickland* addresses counsel's representation throughout the entirety of the trial proceedings. Here, Trumpler did not represent appellant in her full trial proceedings, but only in a proceeding which resulted in the production of harmful evidence.

The prejudice from admitting a statement obtained in violation of the right to counsel implicates the Sixth Amendment in a non-*Strickland* context. *See e.g., Massiah v. United States,* 377 U.S. 201 (1966); *and, Holloway v. State,* 780 S.W.2d 787 (Tex.Cr.App. 1989).

This court should conclude that the Court of Appeals erred in finding that the admittance of the order was harmless.

## 2. The denial of a requested Unanimity Instruction for the Burglary charge led to a potential jeopardy violation.

An objection on the lack of an unanimity instruction on the Burglary instruction was sufficient to preserve the issue for appellate review. *See Francis v. State,* 36 S.W.3d 121, 123 (Tex.Cr.App. 2000) (quoting Art. 36.15 that the defense need only call the court's attention to the omission from the charge and that "no other exception or objection to the court's charge shall be necessary to preserve error ...")

In this case, the appellant was charged with four counts of a Burglary of a Habitation.[1]  Appellant requested unanimity instructions on one or more of the charges, which was denied.

The general verdict form permitted the jury to retain a non-unanimous verdict on the Burglary based on either Tex. Penal Code §30.02  (a)(1) or §30.02 (a)(3).[2]

Under the circumstances at Appellant's trial, the lack of unanimity between

---

[1]  Counts 1 and 2 alleged Appellant entered the complainant's home with the intent to commit the felony offenses of Aggravated Assault or Kidnapping and,
Counts 3 and 4 alleged Appellant entered the complainant's home and therein formed the Intent to commit Aggravated Assault or Kidnapping.

[2]  The statute provides in pertinent part:
(a) A person commits an offense if, without the effective consent of the owner, the person:
(1) enters a habitation, or a building (or any portion of a building) not then open to the  public, with intent to commit a felony, theft, or an assault; or
...
(3) enters a building or habitation and commits or attempts to commit a felony, theft, or assault.
Tex. Penal Code §30.02 (a)(1) & (a)(3)

15

§ (a)(1) and § (a)(3), coupled with the jury charges on the substantive offenses comprising the Burglary, opened the possibility that the jury's verdict violated Appellant's right against Double Jeopardy.

This court has held that a defendant may not be convicted of both Burglary, under §30.02 (a)(3) and the substantive felony underlying the Burglary. *Langs v. State,* 183 S.W.3d 680, 686 (Tex.Cr.App. 2006). This is because the underlying felony is a lesser-included offense to the Burglary and conviction on both implicates the constitutional prohibition against punishing a defendant for greater and lesser offenses. *Ibid.* By contrast, under §30.02 (a)(1), the Burglary and the underlying substantive felony are two distinct offenses. *Ibid.*

The Court of Appeals rejected the claim of harm by the denial of Appellant's jury unanimity instruction, stating that the "trial record must demonstrate that there is some actual harm and not just a theoretical complaint." However, Appellant objected to the omission instruction in the jury charge in a timely manner, subjecting the harm analysis to the standard set out in *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App. 1984); *and, Arline v. State,* 721 S.W.2d 348 (Tex. Cr.App. 1986). "If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than that there must be some harm to the accused from the error." *Almanza,* 686 S.W.2d at 171. Some harm equates to "any

harm" regardless of degree. *LaPoint v. State*, 750 S.W.2d 180, 191 (Tex.Cr.App. 1986); *and, Murphy v. State*, 44 S.W.3d 656, 666 (Tex.App.- Austin 2001).

The general verdict form for the Burglary charge permitted the jury to convict Appellant for both the Burglary under § (a)(3), as well as the underlying Aggravated Assault on which the Burglary was based. Appellant has experienced some harm from the trial court's omission of the unanimity instruction for the Burglary charge.

Because the jury charge in this case did not include the requested unanimity instruction, Appellant experienced harm and the courts failure to correct that error was another egregious error, requiring reversal.

## PRAYER FOR RELIEF

Appellant prays that this court grant her petition for discretionary review and upon reviewing the judgment below, reverse this cause and dismiss the prosecution or remand for new trial.

Submitted by:

*Andria M. Stanley*

Andria M. Stanley
Pro Se
T.D.C.J.# 01861816
Mountain View Unit
2305 Ransom Road
Gatesville, Texas 76528

## UNSWORN DECLARATION

I, Andria Marie Stanley, being presently incarcerated in the Department of Criminal Justice, Mountain View Unit, do hereby declare under penalty of perjury the foregoing brief to be true and correct and executed this date of October 20, 2015.

Submitted by:

*Andria M. Stanley*

Andria M. Stanley
Pro Se
T.D.C.J.# 01861816
Mountain View Unit
2305 Ransom Road
Gatesville, Texas 76528

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2015, a copy of the foregoing Petition for Discretionary Review was served on the following by certified mail, return receipt requested:

Rosemary Lehmberg
Travis County District Attorney's Office
509 W. 11th Street
Austin, Texas 78701

State Prosecuting Attorney
P.O. Box 13406
Austin, Texas 78711

*Andria M Stanley*
Andria M. Stanley

## CERTIFICATE OF COMPLIANCE

I hereby certify that this petition conforms to the requirements of TRAP 9, and consists of 2,213 words per TRAP 9.4 (i)(2)(D).

*Andria M. Stanley*
Andria M. Stanley

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

ANDRIA MARIE STANLEY
Petitioner

vs.                                          Nos. PD-1017-15, PD-1018-15,
                                             PD-1019-15

THE STATE OF TEXAS
Respondent

# APPENDIX-
# PETITION FOR DISCRETIONARY REVIEW

INDEX:

1-23    Court of Appeals Opinion dated July 30, 2015 and Judgment

# Petitions for Discretionary Review

LISA C. McMINN
P.O. Box 13046
Capitol Station
Austin, Texas 78711

State Bar of Texas
ADVANCED CRIMINAL LAW COURSE
July 22-25, 2013
Dallas, Texas

CHAPTER ___

Lisa C. McMinn has been the State Prosecuting Attorney since December 6, 2010. She first joined the office as an assistant in October of 2005. From 1992 to 2005, Lisa worked as a staff attorney for the Court of Criminal Appeals. She began her career at the Tarrant County District Attorney's office, where she served from 1988-1992, as an assistant district attorney in both the misdemeanor and appellate sections.

Lisa graduated from Baylor University in 1984, with a B.A. in Political Science. In 1987, she received her J.D. from Baylor Law School.

Lisa is Board Certified in Criminal Appellate Law and is a regular lecturer on criminal appellate law topics at CLE programs around the state. She is a member of the Texas District and County Attorneys Association.

## Petitions for Discretionary Review

Drafting a good petition for discretionary review (PDR) involves more than just repackaging your brief in the court of appeals. A PDR has a different purpose, is addressed to a different audience, and is governed by different rules.[1] Understanding these differences will greatly increase the odds that your PDR will be considered on its merits and granted.

### I. Process

Upon filing in the Court of Criminal Appeals, PDRs are screened for compliance with the rules of appellate procedure, reviewed by staff attorneys, and voted on by the judges. The Court's disposition of those petitions is published on Wednesdays throughout the year when the Court is in session.

The Court of Criminal Appeals disposed of 1,520 PDRs in fiscal year 2012. Of those, 104 were granted, 1,219 were refused, 142 were struck for non-compliance, and 46 were dismissed as untimely filed.[2]

Anecdotal evidence from the Court shows that for every 100 PDRs that are timely filed, 25 are "non-compliant." Of those 25, approximately 14 do not comply with the Rules of Appellate Procedure and are struck. Most of the stricken PDRs have an insufficient number of copies or fail to attach a copy or a complete copy of the court of appeals' opinion. The other 11 of the non-compliant PDRs are refused

pursuant to *Degrate v. State*, 712 S.W.2d 755 (Tex. Crim. App. 1986), because they fail to address the court of appeals' opinion. Approximately 60 of the 100 PDRs filed are "frivved" on the merits, which means the issues raised are deemed so non-meritorious by central staff that they do not require a "workup" by a staff attorney. The judges can ask for a workup on a PDR that has been frivved, but if no workup is requested, the PDR is summarily refused. Out of the original 100 PDRs filed, only 15 survive the screening process and get a full workup by a staff attorney. Of those 15 PDRs worked up, 5-7 are typically granted.

A workup is generally 3-5 pages long. It consists of a summary the facts, court of appeals holding, and arguments in the petition; a discussion of the applicable law; and a recommended disposition of the PDR. The workup is attached to the PDR and circulated to the judges. Prior to Monday conference, the judges take a preliminary vote on the PDRs that are "called up" for that week. In addition to the vote to grant or refuse, the judges can request discussion of a particular case. Central staff attends conference to answer any questions about the cases that have been marked for discussion. After discussion of a case, a revote may be taken in conference. If a case is not discussed, it is disposed of based on the pre-conference vote tally. It takes at least four votes to grant a PDR.

### II. Rules

The Rules of Appellate Procedure are sometimes changed with very little notice to practitioners. For the most up-to-date

---

[1] All references to the rules are the Texas Rules of Appellate Procedure.

[2] http://www.txcourts.gov/pubs/AR2012/cca/2-cca-activity.pdf

version of the Rules, consult the Supreme Court's website.[3]

The Rules of Appellate Procedure for briefs and PDRs are different, especially with regard to deadlines, word or page limits, contents, and motions for rehearing. The Rules listed below for the most part apply only to PDRs. However, some rules that apply to both PDRs and briefs are included.

## When to File:

### Rule 68.2

(a) *First petition.* The petition must be filed within 30 days after either the day the court of appeals' judgment was rendered or the day the last timely motion for rehearing or timely motion for en banc reconsideration was overruled by the court of appeals.
(b) *Subsequent petition.* Even if the time specified in (a) has expired, a party who otherwise may file a petition may do so within 10 days after the timely filing of another party's petition.
(c) *Extension of time.* The Court of Criminal Appeals may extend the time to file a petition for discretionary review if a party files a motion complying with Rule 10.5 (b) no later than 15 days after the last day for filing the petition.

*Even if you miss the deadline and your PDR is dismissed as untimely filed, you can file a motion for rehearing under Rule 79.1, requesting that the PDR be reinstated.

### Rule 68.9

**Reply.** The opposing party has 15 days after the timely filing of the petition in the

---

[3]http://www.supreme.courts.state.tx.us/rules/TRAP/trap-all.htm#s1r9

Court of Criminal Appeals to file a reply to the petition with the clerk of the Court of Criminal Appeals.

## Where to file:

### Rule 68.3

(a) The petition and all copies of the petition must be filed with the clerk of the Court of Criminal Appeals.
(b) Petition Filed in Court of Appeals. —If a petition is mistakenly filed in the court of appeals, the petition is deemed to have been filed the same day with the clerk of the Court of Criminal Appeals, and the court of appeals clerk must immediately send the petition to the clerk of the Court of Criminal Appeals.

## Contents:

### Rule 68.4

(a) *Table of contents.* The petition must include a table of contents with references to the pages of the petition. The table of contents must indicate the subject matter of each ground or question presented for review.
(b) *Index of Authorities.* The petition must include an index of authorities arranged alphabetically and indicating the pages of the petition where the authorities are cited.
(c) *Statement regarding oral argument.* The petition must include a short statement of why oral argument would be helpful, or a statement that oral argument is waived. If a reply or cross-petition is filed, it likewise must include a statement of why oral argument should or should not be heard.

*The statement about why argument would be helpful doesn't need to be too long or involved. One or two sentences are sufficient. **Example:** "Because this

case presents novel issues this Court has not previously addressed, oral argument would be helpful." More than likely, the judges will grant or deny argument based on their own views about whether argument would be helpful, not on the wording of your statement.

(d) *Statement of the case.* The petition must state briefly the nature of the case. This statement should seldom exceed half a page. The details of the case should be reserved and stated with the pertinent grounds or questions.

> *The statement of the case provides the Court with the context in which your issue arose; very few facts are necessary at this point. **Example**: Appellant was indicted for murder. At trial, the State sought a lesser- included- offense instruction for criminal conspiracy, which was granted over Appellant's objection. The jury convicted Appellant of conspiracy and assessed his punishment at 10 years. The court of appeals affirmed the conviction, holding that conspiracy to commit murder is a lesser-included offense of murder and was properly submitted. This petition challenges that holding.

(e) *Statement of procedural history.* The petition must state: (1) the date any opinion of the court of appeals was handed down, or the date of any order of the court of appeals disposing of the case without an opinion; (2) the date any motion for rehearing was filed (or a statement that none was filed); and (3) the date the motion for rehearing was overruled or otherwise disposed of.

> *Example: On January 1, 2010, the court of appeals reversed the conviction. *Jones v. State*, __ S.W.3d __ No. 02-10-0001- CR (Tex. App. –Fort Worth, delivered January 1, 2010). The State's motion for rehearing was filed on January 13, 2010, and overruled on January 28, 2010.

(f) *Grounds for review.* The petition must state briefly, without argument, the grounds on which the petition is based. The grounds must be separately numbered. If the party has access to the record, the petitioner must (after each ground) refer to the page of the record where the matter complained of is found. Instead of listing grounds for review, the petition may contain the questions presented for review, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of questions should be short and concise, not argumentative or repetitious.

(g) *Argument.* The petition must contain a direct and concise argument, with supporting authorities, amplifying the reasons for granting review. See Rule 66. The court of appeals' opinions will be considered with the petition, and statements in those opinions need not be repeated if counsel accepts them as correct.

(h) *Prayer for relief.* The petition must state clearly the nature of the relief sought.

(i) *Appendix.* The petition must contain a copy of any opinion of the court of appeals.

> *Attach the entire opinion, including concurring or dissenting opinions. An incomplete copy of an opinion is not in compliance, even if it is only missing one page. Many courts of appeals print their opinions on both sides of the page.

5

If you put the opinion in the copier and forget to set it to "two-sided original" you will get a copy with only odd-numbered page and your petition will not be in compliance with the rules.

**Form:**

**Rule 9.4**

Except for the record, a document filed with an appellate court must -- unless the court accepts another form in the interest of justice -- be in the following form:

(a) Printing. A document may be produced by standard typographic printing or by any duplicating process that produces a distinct black image. Printing may be on both sides of the paper.

(b) Paper Type and Size. The paper on which the document is produced must be white or nearly white, and opaque. Paper must be 8 1/2 by 11 inches.

(c) Margins. Papers must have at least one inch margins on both sides and at the top and bottom.

(d) Spacing. Text must be double spaced, but footnotes, block quotations, short lists, and issues or points of error may be single spaced.

(e) Typeface. A document produced on a computer must be printed in a conventional typeface no smaller than 14-point except for footnotes, which must be no smaller than 12-point. A typewritten document must be printed in standard 10-character-per-inch (cpi) monospaced typeface.

(f)-(h) omitted

(i) Length.

(1) Contents Included and Excluded. In calculating the length of a document, every word and every part of the document, including headings, footnotes, and quotations, must be counted except the following: caption, identity of parties and

counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

(2) Maximum Length. The documents listed below must not exceed the following limits:

(A)-(C) omitted.

(D) A ... petition for discretionary review and response in the Court of Criminal Appeals, and a motion for rehearing and response in an appellate court: 4,500 words if computer-generated, and 15 pages if not.

(E) A ... reply to a response to a petition for discretionary review in the Court of Criminal Appeals: 2,400 words if computer-generated, and 8 pages if not.

(3) Certificate of Compliance. A computer-generated document must include a certificate by counsel or an unrepresented party stating the number of words in the document. The person certifying may rely on the word count of the computer program used to prepare the document.

(4) Extensions. A court may, on motion, permit a document that exceeds the prescribed limit.

**Number of copies:**

**Rule 9.3**

(a) omitted

(b)(1) Paper Copies of Document Filed in Paper Form. A party must file the original and 11 copies of any document addressed to ... the Court of Criminal Appeals ... and in the Court of Criminal Appeals, only the original must be filed of a motion for

6

extension of time or a response to the motion . . . .

## Who to serve:

**Rule 68.11**

In addition to the service required by Rule 9.5, service of the petition, the reply, and any amendment or supplementation of a petition or reply must be made on the State Prosecuting Attorney.[4] -

## How to file

**Rule 9.2**

(a) omitted
(b)  Filing by Mail.[5]
   (1)  Timely Filing. A document received within ten days after the filing deadline is considered timely filed if:
     (A) it was sent to the proper clerk by United States Postal Service first class, express, registered, or certified mail;
     (B) it was placed in an envelope or wrapper properly addressed and stamped; and
     (C) it was deposited in the mail on or before the last day for filing.
   (2)  Proof of Mailing. Though it may consider other proof, the appellate court will accept the following as conclusive proof of the date of mailing:
     (A) a legible postmark affixed by the United States Postal Service;
     (B) a receipt for registered or certified mail if the receipt is endorsed by the United States Postal Service; or
     (C) a certificate of mailing by the United States Postal Service.

---

[4] P.O. Box 13046, Capitol Station, Austin, Texas, 78711.
[5] The Court of Criminal Appeals does not currently accept electronic filing of PDRs.

*Under Rule 9.2(b), the mailbox rule applies only to documents delivered to the U.S. Postal Service. *Castillo v. State*, 369 S.W.3d 196, 197 (Tex. Crim. App. 2012).

## III.  Audience and Purpose

The PDR has a different audience and serves a different purpose than the brief in the court of appeals.

## In the court of appeals

The court of appeals is required to write an opinion addressing every issue raised and necessary to the disposition of the appeal. Rule 47.1. It has no choice in the matter. Even if your brief is badly written, the court of appeals must still address it. Your purpose in writing the brief is to set out the facts, standard of review, and substantive law, and persuade the judges to rule in your favor.

Many court of appeals justices have backgrounds in civil law. Long-serving justices on the court of appeals will be better versed in criminal law than those more recently elected.

## In the Court of Criminal Appeals

The members of the Court of Criminal Appeals are called judges, not justices. The judges on the Court of Criminal Appeals are all former criminal defense attorneys, prosecutors or district judges. They are well versed in criminal law. It is not necessary to set out the standard of review or applicable law at great length in a PDR. Judges and staff attorneys are likely to skip long boilerplate paragraphs setting out the standard of review.

7

The Court of Criminal Appeals is a discretionary review court that can cherry pick the cases and issues it will address. The judges can refuse your petition for any reason. The refusal of a PDR does not necessarily mean the Court agrees with the opinion below. Your purpose in filing the PDR is to convince the Court that your issue is interesting enough or important enough to examine more closely and perhaps reconsider the law.

Judge Cochran's concurring opinion in *Bradley v. State*, 235 S.W.3d 808 (Tex.Crim.App. 2007) explains, "Converting a direct appeal claim into a discretionary review ground entails considerably more time, effort, and analysis than a minor tinkering with the original direct appeal brief. 'Instead, it involves a change of character, a recognition that this Court wants to know why we should, as a matter of sound discretion, expend our scarce judicial resources to review the court of appeals' reasoning about a particular legal issue.'"

Rule 66.3, provides the reasons the Court of Criminal Appeals will consider in deciding whether to grant review: (a) the court of appeals' opinion conflicts with an opinion from another court of appeals; (b) the court of appeals has decided an important question of state or federal law that should be settled by the Court of Criminal Appeals, (c) the court of appeals has decided an important question of state or federal law in a way that conflicts with an opinion of the Court of Criminal Appeals or the Supreme Court; (d) the court of appeals has declared unconstitutional or has misinterpreted a statute, rule, or regulation; (e) the justices of the court of appeals have disagreed on a material issue; or (f) the court of appeals' opinion has so far departed from the usual and accepted course of judicial proceedings or has sanctioned such a departure by a lower court as to call for an exercise of the Court of Criminal Appeals' power of supervision.

This is not an exclusive list. For example, sometimes the Court grants review to reconsider its own precedent. These reasons illustrate the types of issues the Court is concerned with. In a nutshell, the Court is looking for issues that are important to the jurisprudence of the State. The Court's primary role is not to correct every mistake made by the courts of appeals. As the court of last resort, its role is to be the caretaker of Texas criminal law. As a result, it is more interested in legal issues than factual issues. The Court is less concerned that there may have been an injustice in a particular case than that the opinion could set bad precedent or create a conflict in the law. The Court is not likely to grant review just because a court of appeals "got it wrong" in one case. On the other hand, if more than one court of appeals has gotten it wrong, if a court of appeals keeps getting it wrong, or if a court of appeals got it really, really wrong, the Court of Criminal Appeals may decide to correct the problem.

Familiarize yourself with the issues currently pending before the Court of Criminal Appeals. The Court includes a listing of all the granted PDRs and grounds for review.[6] The issues are updated after each PDR hand down. They are listed chronologically and alphabetically. The State Prosecuting Attorney's website provides summaries of the issues raised in all granted, pending PDRs. They are listed in alphabetical order.[7]

---

[6] http://www.cca.courts.state.tx.us/issues/ISSUES.pdf
[7] http://www.spa.state.tx.us/

8

If your issue is similar to one that has been granted, point out the similarity to the Court. Even if your issue is not exactly the same, it may be analogous to one already granted. The Court likes to examine different facets of the same issue.

The Court generally prefers to address legal issues such as the proper standard of review, statutory construction, search and seizure, lesser-included offense issues, jeopardy issues, jury unanimity issues, and jury charge issues.

## IV. Drafting

Because of their different purpose, PDRs are written differently than briefs filed in the court of appeals. When filing a PDR, focus on the following:

### Narrowing the issues

A defendant who is convicted and appeals the denial of a challenge for cause, the admissibility of the confession, sufficiency of the evidence, hearsay, jury charge error, and the constitutionality of the statute should not raise all of those issues in a PDR. The kitchen sink method is not effective. Judge Cochran illustrates this point, stating, "I look upon one or two well-crafted grounds for review more favorably as it is most unusual that a court of appeals might be seriously wrong on numerous different issues of statewide importance." *King v. State*, 125 S.W.3d 517, 518 n4 (Tex.Crim.App. 2003)(Cochran, J., concurring).

"Scattershot argument is ineffective. It gives the impression of weakness and desperation, and it insults the intelligence of the court." --Scalia and Garner, Making Your Case

Sometimes a single issue includes sub-issues, especially when the court of appeals has alternative holdings. Because the Court's first impression of multi-ground PDR may be unfavorable, it might be wise to present a broad ground for review with subheadings within the body of the argument.

### Legal issues

A petition arguing that the court of appeals erred under the facts of a particular case in an unpublished opinion is not likely to be granted. The PDR should demonstrate that the issue is not limited to the facts of that case alone but has potential to affect other cases. Sufficiency of the evidence and search and seizure are often fact intensive issues. If you have a sufficiency issue, emphasize the statutory construction aspect of the case. If you have a search and seizure issue, argue that the court of appeals applied the wrong standard of review or that this holding will have broad application.

### *Degrate*

A PDR should address error in the court of appeals' opinion, not error in the trial court. *Degrate v. State*, 712 S.W.2d 755 (Tex. Crim. App. 1986). Don't argue that the trial court erred by granting the defendant's motion to suppress. Point out the error in the court of appeals' opinion affirming the trial court's granting of the motion to suppress. A PDR arguing that the court of appeals erred by holding that the trial court did not err is in danger of being "*Degrated.*" The petition must address the court of appeals' analysis by arguing that it misapplied precedent, misconstrued a statute, applied the wrong standard of review, conflicts with an opinion from another court of appeals, etc.

About 10-12 % of all the non-compliant PDRs are refused because of *Degrate.* Those petitions are refused–not dismissed or struck–so the attorney doesn't know the reason the petition was refused and has no opportunity to correct the error. Some attorneys are routinely "*Degrated*," because they keep making the same mistake over and over again. Some actually cut and paste their entire argument from the brief and re-label it a PDR.

In *King v. State,* 125 S.W.3d 517 (Tex. Crim. App. 2003), Judge Cochran's concurring opinion discusses a PDR that was presumably "*Degrated.*" The Court of Appeals affirmed the trial court's ruling for a reason not explicitly relied on by the trial judge. Judge Cochran points out how the ground for review and the accompanying argument provided no clue about the court of appeals analysis. All of the argument was focused on the trial judge's ruling. Judge Cochran proposed a viable argument the appellant could have made about the court of appeals' analysis that involved statutory construction. There was a good issue in the case, but the appellant didn't recognize or know how to present it.

### Evolving issues

Judge Cochran's concurring opinion in *King* illustrates why parties should not be too wed to the exact formulation of the issue raised in the court of appeals. As pointed out above, you must discuss the court of appeals' holding, not the trial court's ruling. Sometimes the sole issue in the PDR is the standard of review the court of appeals applied to the trial court's ruling. Sometimes the issue the court of appeals found dispositive may not have received much attention in the trial court. For example, if the trial court denies a motion to suppress a confession resulting from the

defendant's arrest after a traffic stop, the main issue in the trial court may have centered on whether the defendant was required to use a turn signal at a particular intersection. But the court of appeals may hold that even if the stop was improper, the taint from the illegal stop was attenuated, rendering the confession admissible. The issue on PDR will be the attenuation doctrine, not the turn signal issue.

Even if the issue is roughly the same in the trial court, court of appeals, and Court of Criminal Appeals, nuances in issues emerge as the case moves up the appellate ladder. Issues become more focused and complex in the Court of Criminal Appeals.

For the most part, issues cannot be presented in the PDR that were not raised in the court of appeals because the Court of Criminal Appeals only addresses "decisions" of the courts of appeals. But there are exceptions to the rule. The first is preservation of error. Preservation of error is a systemic requirement that the court of appeals should address on appeal, even if the issue was not raised by the State. *Ford v. State,* 305 S.W.3d 530, 532-33 (Tex. Crim. App. 2009). If the court of appeals did not address preservation, the Court of Criminal Appeals can do so if the State's PDR raises the issue. *Ibid.* "The State's failure to raise preservation to the court of appeals is no longer a bar to it raising it for the first time in this court in a petition for discretionary review." *Wilson v. State,* 311 S.W.3d 452, 474 (Tex. Crim. App. 2010).

The second exception is that the winning party in the trial court need not argue issues in the court of appeals that would uphold the trial court's ruling. "A trial court's ruling should be affirmed if it is right for any reason. *De La Paz v. State,* 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). The

10

State's failure to raise an issue in the court of appeals does not prevent the Court of the trial court. *Volosen v. State*, 227 S.W.3d 77, 80 (Tex. Crim. App. 2007). "Regardless of whether an appellee files a brief, a first-level appellate court has the obligation to conduct a thorough review of an appellant's claims, including any subsidiary issues that might result in upholding the trial court's judgment." *Ibid.* This doesn't mean the Court of Criminal Appeals will grant such issues, but it has the authority to do so.

Both the preservation rule and the "prevailing party" rule will usually benefit the State because the State is usually the appellee. But defendants can rely on *Ford* and *Volosen* in State's appeals where the defendant is the prevailing party.

It is not always necessary to say, "The court of appeals erred by holding...." Those are wasted words that do not focus on the issue. Although the argument portion of your PDR must discuss what the court of appeals did wrong in its analysis, your ground for review can merely state the issue involved without running afoul of *Degrate*. The following are examples of well-worded grounds for review that were recently granted:

"In order to preserve error relative to a limitation on voir dire examination of a prospective juror, must a defendant object after the trial court sustains the State's objection to a proposed question?"

"May a non-aggravated state jail felony conviction, previously punished under the range for a second degree felony, be used for purpose of enhancing punishment to that of a habitual criminal under TEX. PEN. CODE § 12.42(d)?"

Criminal Appeals from addressing it on discretionary review if the State prevailed in **Grounds (or questions) for review**

In the court of appeals, it doesn't matter how you word your point of error because the court of appeals is required to address it. But in the Court of Criminal Appeals, the wording of the ground for review is your first opportunity to make a good (or bad) impression. Sometimes it's helpful to write the ground for review after you have completed the argument portion of the PDR.

Don't make the ground for review too long, too argumentative, or too full of facts, but make it specific enough so the reader has an idea of what the issue is.

"Should the trial court's failure to execute a certification of right to appeal after entry of an appealable judgment result in Petitioner being denied his right of appeal where he was convicted by a jury upon a plea of not guilty."

"Did the Legislature intend to allow separate punishments for indecency with a child by both exposure and contact committed against the same victim when the exposure precedes the contact?"

**Brevity**

"Tediousness is the most fatal of all faults."
—Samuel Johnson.

The Court of Criminal Appeals disposes of thousands of cases every year. Judges and staff attorneys read all day long. Their attention span is short. Grab their attention quickly and don't make them pay attention for too long.

11

Unless your PDR has multiple grounds and/ or complex issues, it should not get close to the word count limit. If you have a single issue with 4500 words of argument, you are likely repeating yourself, over-complicating the issue, or including too many unnecessary facts or too much law.

Outlining before you begin writing helps to narrow the issue and organize your argument. An outline prevents you from skipping around or writing in a disjointed, "stream of consciousness" style, and it prevents repetition.

A brief in the court of appeals usually has a lengthy statement of facts, setting out all the pertinent facts in the case. The PDR rules don't even require a statement of facts and suggest that the "details of the case" be included in the argument. Rule 68.4 (d). Set out the facts that relate to the issue you're raising, but don't include unnecessary or irrelevant facts. If your petition is limited to whether the State's notice of appeal was adequate, you don't need to recite the facts of the offense itself. A petition with several pages of facts gives the impression that that issue is limited to its facts and is less likely to be granted.

Don't include details that are unnecessary, such as the date of arraignment, what district court the case was tried in, and the judge who presided. Also, don't name all the parties and witnesses unless necessary. When the reader sees a name or date, he assumes there's a need to remember it. The purpose of a PDR is to get the judges interested. If they use up all their available attention on your overly long and detailed recitation of the facts, they won't have any left for your actual issue.

## Quotes

Long block quotes should be avoided. A big single-spaced, double-indented quote is a lot of concentrated ink in one area. The temptation is to skim it or skip over it. Paraphrase or cut the quote down to size by eliminating the parts that aren't important to your case. If you need to put the quote in context, paraphrase that part and include only the best part of the quote. Or break up long quotes into smaller chunks.

## Getting to the point

"If you start with a bang, you won't end with a whimper." –T.S. Eliot

"Don't bury the lede."

Journalism professor, Tony Rogers, asks the students in his classes to write a newspaper account of a doctor giving a speech to a business group about fad diets and physical fitness. Midway through the speech, the doctor collapses from a heart attack and dies on the way to the hospital. Invariably, Rogers says, some of his students will begin the story with "Dr. Wiley Perkins gave a speech to a group of business people yesterday about the problems with fad diets." The story of course, is not about the speech, but about the doctor's death.

It is easier to write the opening to a news story than a PDR because a news story is only reporting facts. A PDR, however, has facts, law, the court of appeals' holding, and a central issue. It is sometimes difficult to start with your issue without providing some background. Nevertheless, it is important to tell the Court what your issue is and why it is important early on. The reader's attention span drops with each page, sometimes exponentially beyond a certain number of

12

pages. If the reader can't find the heart of your argument, he may start skimming in an effort to find it, in which case, he might skim over something important. Or, worse yet, he may simply lose interest.

## Footnotes

Some writers include case cites or the text of statutes in footnotes. Footnotes are also used to make the reader aware of something that is interesting but not essential to the argument. A footnote is also a good place to dispel any qualms the Court might have about granting review in your case. Footnotes are often used extensively in briefs and opinions, where an exhaustive approach to an issue is appropriate. But they should be used sparingly in a PDR and be no longer than a few sentences unless they contain the text of a statute.

## Authority

One case is generally enough for each proposition of law. String cites are unnecessary unless you are tracing the history of a particular principle, showing how other jurisdictions treat an issue, or showing how many courts of appeals are on one side of an issue or the other.

State the primary holding of the opinions you cite and explain how they apply to your case. If your issue depends on a particular statute, quote the pertinent part of it. Don't just cite a case or statute and expect the judge or staff attorney to pick up a book or go to Lexis or Westlaw to read it. Always use jump cites to pinpoint the page where the holding appears and always use parentheticals setting out the holding when you use a "see" cite. The key is to make it easy for the reader to follow your argument

and understand how the authority you've cited supports it.

## Tone

Credibility is important at any phase of a proceeding, but it is especially so when the Court's decision to grant review is discretionary. Do not be overly critical of the court of appeals, even if you believe their opinion was nonsensical. Avoid any suggestion that the court intentionally erred. If the court omitted facts from its analysis, it is much more tactful to say it overlooked rather than ignored them. Sometimes the court of appeals may not adequately explain its rationale, but resist the urge to belittle the opinion. The judges on the Court of Criminal Appeals are more likely to empathize with the court of appeals justices than with snarky appellate lawyers.

## V. Odds and Ends

### A. When to file a Motion for Rehearing before filing a PDR:

Some judges prefer that the parties give the courts of appeals an opportunity to correct their mistakes by filing a motion for rehearing. Most of the time, a motion for rehearing will be denied, but pointing out to the Court of Criminal Appeals that you gave the lower court that opportunity could be beneficial.

Motions for rehearing are always a good idea if the court of appeals incorrectly stated crucial facts, misstated the law, or missed recent, binding opinion from the Court of Criminal Appeals or the U.S. Supreme Court.

### B. When your opponent files a PDR:

13

You have three options: file a reply, do nothing, or file a cross-petition.

**1. Reply:** A reply to a party's PDR is due 15 days after the opposing party's petition is timely filed in the court of appeals. Rule 68.7 (b).

**2. Do nothing:** As a general rule, a reply to a PDR is needed only if your opponent's PDR misrepresents the law or the facts or there is a procedural problem with the case that would make it difficult for the Court of Criminal Appeals to address the issue or grant the relief sought. Very little is gained by filing a reply that merely says the court of appeals was correct.

**3. "Cross-petition":** Rule 68.2(b) provides for a "subsequent petition," stating, "Even if the time specified in (a) has expired, a party who otherwise may file a petition may do so within 10 days after the timely filing of another party's petition."

A cross-petition is often filed when the court of appeals affirms the conviction, but reverses on punishment; reverses one conviction, but affirms another; or affirms the conviction, but deletes a deadly weapon finding or restitution order. In these cases, both parties won in part and lost in part. One party may not care enough about the loss to file a PDR unless the other party files one.

A cross-petition might also be called for even if you won the case outright in the court of appeals. File a cross-petition when the court of appeals' ultimate holding is in your favor, but it disagreed with you on an issue and your opponent files a PDR, which, if decided in his favor, would change the outcome of the case.

Another example is if the trial court grants a new trial on two bases, the State appeals, and the court of appeals holds that reason A for granting a new trial was valid, and reason B was not. If the State files a PDR challenging the court of appeals' holding as to reason A, Appellee should file a cross-petition challenging the holding as to reason B.[3]

The importance of the cross-petition was recently illustrated in *Payne v. State*, PD-1214-11, (Tex.Crim.App. 2013) (not for publication) 2013 Tex. Crim. App. Unpub. LEXIS 237. The victim's hearsay statements were admitted at trial. The State argued error was not preserved, the statements were not hearsay, and their admission was harmless. The Court of Appeals held that Appellant's objections were sufficient and the statements were inadmissible, but error was harmless. Appellant's petition for discretionary review addressed the harm analysis. The State did not file a cross-petition on preservation and error, but after the Court granted Appellant's PDR on the harm analysis, the State raised those issues in its brief. The Court however, declined to consider the State's arguments on those topics because it did not file a cross petition. The Court assumed error was preserved that that the statements were hearsay, and it reversed due to a faulty harm

---

[3] On PDR, the parties keep the same designation they had in the court of appeals. If the State appealed to the court of appeals and wins, the style in the Court of Criminal Appeals is still *State v. Doe* and the defendant remains the Appellee, even if he is the one filing the PDR. If the defendant appealed, he remains the Appellant throughout the process, even if the State loses in the court of appeals and files a PDR.

analysis. The State's motion for rehearing arguing that the Court's should reconsider its policy of requiring a cross-petition to raise such issues was denied.

**B. If your PDR is granted:**
You must file a brief within 30 days after review is granted. Rule 70.1. **This is mandatory.** You cannot simply rely on your PDR. Rule 38.1 applies to your brief on the merits.

**C. If your opponent's PDR is granted:**
You must file a brief within 30 days after the petitioner's brief is filed. Rule 70.2. **This is mandatory.** Rule 38.2 applies to your brief. Also, there is no motion for rehearing from the granting of a PDR. Rule 79.2 (b). But if you think the PDR should not have been granted, you can argue that in your brief and suggest that the Court dismiss the PDR as improvidently granted.

**D. If your PDR is refused:**
You have 15 days to file a motion for rehearing from the refusal of a PDR under Rule 79.1. You must certify that your motion is based on "substantial intervening circumstances" or "other significant circumstances." Rule 79.2(c).

## VI. Current Trends in PDR issues

**Court costs and fees**

"The Court of Appeals erred by creating an exception to *Mayer v. State*, and holding that withholding money from an indigent inmate's trust account to pay court-appointed attorney's fees does not violate the statute." (Cates, PD-0861-12)

"The Fourteenth Court of Appeals erred in deleting the specific amount of court costs on the judgment of conviction based upon the lack of a certified bill of costs in the record when a specific amount of court costs does not have to be included on the judgment."

"The Fourteenth Court of Appeals erred in deleting court costs on the written judgment based upon the lack of a certified bill of costs in the record when appellant failed to preserve his claim for appellate review and the issue is not ripe for review."

"The Fourteenth Court of Appeals erred in deleting the court costs on the written judgment based upon the lack of a certified bill of costs in the record when there is no requirement that the record include a certified bill of costs."

"The Fourteenth Court of Appeals erred in deleting the court costs on the written judgment based upon the lack of a certified bill of costs in the record when the evidence was otherwise sufficient to sustain the assessed court costs."

"The Fourteenth Court of Appeals erred in deleting the court costs on the written judgment based upon the lack of a certified bill of costs in the record when the district clerk's office has no authority to create a new document for the appellate record after the notice of appeal has been filed."

"The Fourteenth Court of Appeals erred in deleting the court costs on the written judgment based upon the lack of a certified bill of costs in the record when the district clerk's office did supplement the appellate record with a certified bill of costs." (Johnson, PD-0193-13)

"Is an objection concerning repayment of special prosecutor fees required to preserve error?" (Landers, PD-1673-12).

"May a final judgment revoking community supervision assess an attorney fee incurred at the imposition of community supervision, if neither evidence nor a court finding

15

indicates the defendant has ever been able to pay such a fee?" (Wiley, PD-1728-12)

**Lesser included offenses**

"Did the Legislature intend to allow separate punishments for indecency with a child by both exposure and contact committed against the same victim when the exposure precedes the contact?"
"Was the exposure in this case subsumed by the sexual contact?" (*Loving*, PD-1334-12)

"Whether the Court of Appeals erred in holding that criminal trespass should have been submitted as a lesser included offense to burglary of a habitation, when the defendant's entire body did not enter the habitation, such he could not have been guilty of a criminal trespass?" (*Meru*, PD-1635-12)

"The Ninth Court of Appeals erred when it upheld the trial court's denial of Appellant's request for an instruction on a lesser included offense where evidence had been presented at trial which supported the submission of the lesser included in the jury charge." (*Wortham*, PD-0765-12

"Should the court of appeals have reformed the verdict to the lesser-included offense of criminally negligent homicide rather than rendering a verdict of acquittal?" (*Britain*, PD-0175-13)

"In the alternative, the Court of Appeals reversibly erred by failing to reform the judgment to reflect a conviction for the lesser included offense of attempted manufacture." (*Canida*, PD-0003-13)

"The Court of Appeals reversibly erred by failing to reform the judgment to reflect a conviction for the lesser included offense of

attempted tampering with or fabricating physical evidence." (*Rabb*, PD-1643-12)

**Defenses**

"Is a defendant who, at trial, both flatly denies the elements of aggravated sexual assault of a child and recants his pre-trial admission entitled to an instruction on the medical-care defense based upon that pre-trial admission?" (*Villa*, PD-0792-12)

"Whether Section 22.021 of the Texas Penal Code is unconstitutional, under the Due Process Clause of the Fourteenth Amendment, due to its failure to require the State to prove that Defendant had a culpable mental state ("mens rea") relating to the alleged victim's age when engaging in the conduct alleged?
Whether Section 22.021 of the Texas Penal Code is unconstitutional, under the Due Process Clause of the Fourteenth Amendment, due to its failure to recognize an affirmative defense based on Defendant's reasonable belief that the alleged victim at the time was 17 years of age or older?
Whether Section 22.021 of the Texas Penal Code is unconstitutional, under the Due Course of Law provision of the Texas Constitution, Article I, Section 19, due to its failure to require the State to prove that Defendant had a culpable mental state ("mens rea") relating to the victim's age when engaging in the conduct alleged?
Whether Section 22.021 of the Texas Penal Code is unconstitutional, under the Due Course of Law provision of the Texas Constitution, Article I, Section 19, due to its failure to recognize an affirmative defense based on Defendant's reasonable belief that the alleged victim at the time was 17 years of age or older?" (*Fleming*, PD-1250-12)

16

"The Court of Appeals erred by affirming
the trial court when it, over objection, failed
to include in the court's charge to the jury on
guilt/innocence the affirmative defense that
the actor was not more than three years older
than the victim at the time of the offense."
(*Sanchez*, PD-1289-12)

"When the evidence established only that
appellant "felt threatened" before he raised
his gun and began firing, must the trial court
instruct on sudden passion?
Had the trial court erroneously failed to
instruct on sudden passion, did a sentence
above 20 years automatically demonstrate
harm, even after the jury rejected appellant's
claim that he "felt threatened" by finding
against self-defense?" (*Wooten*, PD-1437-
12)

"Was appellant entitled to a jury instruction
on "voluntary act?" (*Farmer*, PD-2620-12)

17

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-13-00390-CR
NO. 03-13-00391-CR
NO. 03-13-00392-CR

**Andria Stanley, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NOS. D-1-DC-12-300267, D-1-DC-12-300754, & D-1-DC-12-300755
THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

## MEMORANDUM OPINION

A jury convicted appellant Andria Stanley of four felony offenses—two counts of family violence aggravated assault, *see* Tex. Penal Code § 22.02(a)(1), (2), aggravated kidnapping, *see id.* § 20.04, and burglary of a habitation, *see id.* § 30.02(a)(1)—all arising out of a visit she made to her ex-husband's home in the middle of the night. The jury assessed appellant's punishment at confinement in the Texas Department of Criminal Justice for 50 years and 20 years for the assault offenses, *see id.* §§ 12.32, 12.33, 22.02(b)(1), 50 years for the kidnapping offense, *see id.* §§ 12.32, 20.04(c), and 50 years for the burglary offense, *see id.* §§ 12.32, 30.02(d). On appeal, appellant complains about the admission of evidence and the denial of a requested jury charge instruction. Finding no reversible error, we affirm the judgments of conviction for the first count of family violence aggravated assault (Count I in appeal number 03-13-00390-CR), the aggravated

kidnapping (appeal number 03-13-00391-CR), and the burglary of a habitation (appeal number 03-13-00392-CR). However, through our own review of the record, we have found non-reversible clerical error in the written judgment of conviction for the second count of family violence aggravated assault (Count III in appeal number 03-13-00390-CR[1]). We modify that judgment to correct the error and affirm that judgment of conviction as modified.

## DISCUSSION[2]

In two points of error, appellant asserts that the trial court erred by (1) admitting an agreed protective order from a family law proceeding involving appellant and her ex-husband, and (2) failing to include her requested instruction regarding jury unanimity on the burglary of a habitation in the jury charge.

### Admission of Protective Order

At the time the instant offenses were committed, appellant and her ex-husband, Jason Witt, were involved in post-divorce family law proceedings concerning the custody of their two children. At appellant's trial, the State offered a copy of an agreed protective ordered entered in those proceedings, State's Exhibit #71, which contained a finding that appellant "caused serious bodily injury to [Witt]." Appellant objected to the admission of the protective order, asserting that her family law attorney provided ineffective assistance of counsel by advising her to agree to the

---

[1] The State abandoned Count II of the indictment, which also alleged family violence aggravated assault, during trial prior to closing its case-in-chief.

[2] Because the parties are familiar with the facts of these cases, their procedural histories, and the evidence adduced at trial, we limit recitation of them in this opinion to those necessary to advise the parties of the Court's decisions and the basic reasons for them. *See* Tex. R. App. P. 47.1, 47.4.

protective order in the family law proceedings. The trial court overruled appellant's objection and admitted the order as a statement against interest as well as an admission of a party opponent. *See* Tex. R. Evid. 803(24) (providing that statement against penal interest not excluded by hearsay rule), 801(e)(2) (providing that admission by party opponent is not hearsay).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). A trial court abuses its discretion only if its determination "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Sandoval*, 409 S.W.3d at 281. We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Sandoval*, 409 S.W.3d at 281. If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we will uphold that decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Sandoval*, 409 S.W.3d at 297.

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the appellant.[3] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307

---

[3] For the sake of our discussion, we will assume without deciding that appellant was entitled to the effective assistance of counsel under *Strickland* at the protective order hearing, a civil proceeding separate from the criminal proceeding. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (setting forth standard of review for analyzing claim of ineffective assistance of counsel in criminal case).

(Tex. Crim. App. 2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 686. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Moreover, "[t]he mere fact that another attorney might have pursued a different course of action . . . does not suffice to prove a claim of ineffective assistance of counsel." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012); *see Munoz v. State*, No. 03-12-00809-CR, 2014 WL 6208654, at *5 (Tex. App.—Austin Nov. 14, 2014, pet. ref'd) (mem. op., not designated for publication); *Harris v. State*, 125 S.W.3d 45, 54 (Tex. App.—Austin 2003, pet. ref'd, untimely filed).

At trial, appellant called the attorney who represented her in the family law proceedings to testify, outside the jury's presence, about his advice to her that she agree to the

4

protective order in lieu of testifying at the protective order hearing.[4] Her attorney testified that he advised her to agree to the protective order in lieu of testifying at the hearing based on "[his] concern that she would state something inadvertently on the record that would harm her greatly in her criminal case." He said that he "didn't want any more information being put on the record in a case related to anything related to this relationship because I didn't want it to be used against her in the criminal case." In her objection at trial and in her argument on appeal, appellant maintains that this was faulty legal advice because she could have invoked her Fifth Amendment right against self-incrimination as to any topics that might adversely affect her criminal case. However, her family law counsel averred that he and appellant had been "very close friends for a long period of time" before he began representing her in the family law matters. He expressed his understanding that the family law judge presiding over the protective order hearing would have granted appellant's invocation of the Fifth Amendment right regarding the events forming the basis of the instant criminal charges, but indicated that "there were ancillary matters that possibly could have affected what went on." Appellant's family law attorney stated:

> At that point, honest to goodness, my only concern to her was to avoid her stepping in land mines that she set for herself, which she has a tendency to do, and

---

[4] At the time of the instant offenses, a hearing regarding final arrangements for custody and child support was pending. Also pending was a contempt proceeding relating to appellant's failure to comply with the family law court's previously entered order. Upon learning that his client had been assaulted and shot, Witt's family law attorney filed an application for a protective order. All of these issues were taken up at the final hearing. In her brief, appellant conflates the contempt hearing and the protective order hearing. However, it is clear from the record that these hearings, relating to mutually exclusive issues, were separate and distinct, although scheduled on the same date, and the legal advice at issue related only to the protective order hearing.

I didn't want something to happen to her in the criminal case [sic] that affected her here. That was my biggest concern.

. . .

Because my concern was that she would say something that would harm her in this criminal case in some way, shape or form. Because I had recently just gone over the whole family law case. It's voluminous. It's a huge file.

. . .

I read everything in that file and there [were] a lot of things that were said and done during the course of the family law case that concerned me, and my concern was she's going to do something like this again on the witness stand and it's going to hurt her in the criminal case.

Appellant asserts in her brief that counsel's testimony "betrays a misunderstanding of the scope of the Fifth Amendment privilege." This argument assumes that the ancillary matters counsel referenced were matters to which she could have invoked her Fifth Amendment right and remained silent. However, while appellant's family law attorney repeatedly expressed his concern about appellant testifying about matters that could be used against her in the criminal proceeding, he did not express that these were matters exposing her to criminal liability or criminal responsibility to which she could have invoked her right to remain silent. This is an assumption appellant makes, which is not founded in the record. *See Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013) ("[C]ounsel's alleged deficiency must be affirmatively demonstrated in the trial record."). In fact, the tenor of counsel's testimony suggested otherwise.

Furthermore, in testifying about the circumstances under which he advised appellant to agree to the protective order, counsel indicated that it was ultimately appellant's decision:

I strongly suggested that she sign it. I didn't force her to do anything, but I said in my legal opinion I think you need to sign this, I think the Court is going to grant it either way, and I think that it's in your best interest to sign this to keep from getting into any ancillary matters that may hurt you in your criminal case.

6

Counsel also recounted the fact that appellant insisted on making some changes to the order before signing it.

Based on the testimony of appellant's family law attorney regarding his personal acquaintance with appellant, his familiarity with the family law case, and his knowledge of the relationship between appellant and her ex-husband, the trial court could have reasonably concluded that counsel's advice to her at the protective order hearing was the product of an informed strategic and tactical decision, which appellant agreed with and followed at the time but later criticized in a self-serving attempt to exclude her admission. Based on the record before it, the trial court could have reasonably found that counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms—that is, that appellant failed to demonstrate deficient performance on the part of her family law counsel. *See Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of an informed strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.'") (quoting *Goodspeed*, 187 S.W.3d at 392). Accordingly, we conclude that the trial court did not abuse its discretion in admitting the protective order into evidence at appellant's trial.

Moreover, even assuming the trial court erred in admitting the protective order into evidence, we would nevertheless conclude that the error did not constitute reversible error. *See* Tex. R. App. P. 44.2(b). The erroneous admission of evidence is non-constitutional error. *Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.); *see Coble v. State*, 330 S.W.3d 253, 280

(Tex. Crim. App. 2010); *Casey*, 215 S.W.3d at 885. Non-constitutional error is reversible only if it affects the substantial rights of the defendant. *See* Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance the error did not influence the jury, or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93; *Kirby*, 208 S.W.3d at 574.

In assessing potential harm, our focus is not on whether the outcome of the trial was proper despite the error but on whether the error had a substantial or injurious effect or influence on the jury's verdict. *Barshaw*, 342 S.W.3d at 93–94. We review the entire record to ascertain the effect or influence on the verdict of the wrongfully admitted evidence. *Id.* at 93; *see Coble*, 330 S.W.3d at 280 (in conducting harm analysis "we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence"); *see also Moon v. State*, 44 S.W.3d 589, 595 (Tex. App.—Fort Worth 2001, pet. ref'd). We consider all the evidence that was admitted at trial, the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case. *Barshaw*, 342 S.W.3d at 94. We may also consider the jury instructions, the parties' theories of the case, closing arguments, voir dire, and whether the State emphasized the error. *Id.*; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

In his testimony at trial, appellant's ex-husband described the events of that night, providing details of appellant's unauthorized entry into his home and the ensuing attack. He testified that he awoke during the night to sounds in his bedroom. He saw a figure and then was struck in the

8

head with a wooden baton-like object. He attempted to defend himself, struggling with his assailant. His attacker yelled, and Witt recognized the voice as appellant. Appellant then fired a gun at Witt, and he turned on the lights and saw appellant standing with a gun in her hand. Holding the gun on him, appellant demanded that he make concessions in their ongoing custody battle. Witt recounted how appellant then forced him at gunpoint to lie face down on the bed and bound his hands behind his back and bound his feet at the ankles. She next wrapped him up in the bed sheets, sat him up on the bed, and wrapped plastic wrap around his head. Panicked, Witt began to struggle and fell to the floor. As he lay on the floor, appellant struck him repeatedly on the back of the head with the wooden object. As he struggled, Witt managed to free one hand and his feet. He then attempted to get the gun, which was at the end of the bed, as did appellant. As they struggled for the gun, appellant fired the gun at Witt, striking him in the face. They continued to struggle over the gun, and eventually Witt gained control of the gun. He struck appellant with the barrel of the gun, pushed her out of his bedroom, and managed to secure and lock his bedroom door. He then locked himself in his bathroom and called 911.

Witt's testimony was corroborated by physical evidence recovered from his home (including a broken wooden baton and roll of plastic wrap, both with appellant's and Witt's DNA on them) and from appellant (blood containing Witt's DNA on the bottom of one of the shoes she wore that night), photographic evidence depicting Witt's injuries (which included a gunshot wound to his cheek as well as contusions and lacerations to his face and head, some of which required staples and sutures, and ligature marks on his wrists), medical evidence from treating hospital physicians, police officers' testimony regarding Witt's condition and demeanor when they arrived

9

at his home (including his initial refusal to come out of his locked bathroom until he was convinced it was in fact the police, and the fact that he was covered in blood when he eventually emerged), as well as the testimony of appellant's mother regarding admissions appellant made upon her return from Austin (that she went to visit Witt, that she had her mother's gun with her, that the gun "went off," and that Witt "might have been hit"). The prosecutors did not mention the protective order in closing argument, nor did the State overly emphasize the protective order otherwise.

After examining the record as a whole, including the strength of the State's case, we have fair assurance that the admission of the protective order, if it was error, did not influence the jury or had but a slight effect. Therefore, any error in admitting the order was harmless.

We overrule appellant's first point of error.

## Denial of Requested Jury Charge Instruction

In her second point of error, appellant complains about the trial court's failure to include her requested jury charge instruction concerning unanimity on the burglary of a habitation charge and argues that she was harmed by the omission of such an instruction. The burglary

indictment in this case charged appellant with burglary of a habitation in four separate paragraphs,[5] alleging (in relevant part) that appellant did then and there

> with intent to commit the felony offense of Aggravated Assault, enter a habitation, without the effective consent of Jason Witt, the owner thereof . . .

> intentionally or knowingly enter a habitation, without the effective consent of Jason Witt, the owner thereof, . . . and attempted to commit or committed the felony of Aggravated Assault, . . .

> with intent to commit the felony offense of Kidnapping, enter a habitation, without the effective consent of Jason Witt, the owner thereof, . . . [or]

> intentionally or knowingly enter a habitation, without the effective consent of Jason Witt, the owner thereof, . . . and attempted to commit or committed the felony of Kidnapping, . . . .[6]

---

[5] The four paragraphs were originally contained in the indictment as separate counts. However, prior to the start of trial, the State abandoned—without objection from appellant—the count language in order to present four alternative paragraphs. *See Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007) ("When the State wishes to charge multiple offenses in a single indictment, it is required by statute to set out each separate offense in a separate "count." Then separate "paragraphs" within a single count may allege different methods of committing the same offense." (citing Tex. Code Crim. Proc. art. 21.24(a), (b))); *Owens v. State*, 96 S.W.3d 668, 673 (Tex. App.—Austin 2003, no pet.) ("As a general rule, a 'count' is used to charge the offense itself and a 'paragraph' is that portion of a count which alleges the method of committing the offense.").

[6] Each of the paragraphs also contained an allegation that Witt was a family member with whom appellant had had a dating relationship, *see* Tex. Fam. Code §§ 71.0021(b) (defining "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature"), .003 (defining "family" to include "individuals who are former spouses of each other [or] individuals who are the parents of the same child"), as well as a deadly weapon allegation, *see* Tex. Code Crim. Proc. art. 42.12, § 3g(a)(2) (providing for affirmative finding upon showing that defendant used or exhibited deadly weapon during commission of felony or immediate flight therefrom), which we omit here because they are not relevant to the complaint appellant raises in this point of error.

11

*See* Tex. Penal Code § 30.02(a)(1) (providing that offense of burglary is committed by entering habitation without consent of owner with intent to commit felony, theft, or assault), (3) (providing that offense of burglary is committed by entering habitation and then committing or attempting to commit felony, theft, or assault).

At trial, appellant asked for language to be included in the jury charge instructing the jurors that in order to convict appellant of burglary of a habitation, they must unanimously agree as to how she committed the burglary. Concluding that the jury did not have to unanimously agree on the manner and means by which appellant committed burglary of a habitation, the trial court denied appellant's requested instruction.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth analysis for determining whether jury charge error requires reversal). If the jury charge error has been properly preserved by an objection or request for instruction, reversal is required if the appellant has suffered "some harm" from the error. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("If there was error and appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the defendant,' which we have defined to mean that there is 'some harm.'").

12

Texas law requires a unanimous jury verdict in all criminal cases. *See* Tex. Code Crim. Proc. art. 36.29(a); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). More specifically, "the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases." *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014) (citing *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007)). Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act. *Ngo*, 175 S.W.3d at 745; *see Cosio*, 353 S.W.3d at 771 (unanimous verdict "means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged'") (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). "[T]he jury must be instructed that it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt." *Saenz v. State*, 451 S.W.3d 388, 390 (Tex. Crim. App. 2014) (quoting *Cosio*, 353 S.W.3d at 776).

However, the requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense. *Jourdan*, 428 S.W.3d at 94; *Pizzo*, 235 S.W.3d at 715. "A jury must unanimously agree about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011); *see Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) ("The jury must agree that the defendant committed one specific crime. That does not mean, however, that the jury must unanimously find that the

13

defendant committed that crime in one specific way or even with one specific act." (internal citations omitted)); *Miranda v. State*, 391 S.W.3d 302, 310 (Tex. App.—Austin 2012, pet. ref'd) ("Jury unanimity is required with respect to all essential elements of the offense at issue; however, the jury need not unanimously agree on the specific method of committing a single offense.").

"'[M]anner or means' describes *how* the defendant committed the specific statutory criminal act." *Ngo*, 175 S.W.3d at 745. The State is permitted to plead alternate manner and means of committing the same offense. *Landrian*, 268 S.W.3d at 535–36. "'Therefore, different modes of commission may be presented in a jury instruction in the disjunctive when the charging instrument, in a single count, alleged the different means in the conjunctive.'" *Jourdan*, 428 S.W.3d at 94 (quoting *Pizzo*, 235 S.W.3d at 715). "Determining whether a statute creates multiple offenses (which requires unanimity as to one offense) or merely a single offense that may be committed by one of multiple manner and means (which do not require unanimity) 'is a function of legislative intent, and in examining statutory language for legislative intent, we inquire into the 'gravamen' of the offense.'" *Irielle v. State*, 441 S.W.3d 868, 874 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Jourdan*, 428 S.W.3d at 95–96).

The gravamen of a burglary offense is the unauthorized entry with the requisite mental state or further requisite act. *See DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988) ("The gravamen of the offense of burglary clearly remains entry of a building or habitation without the effective consent of the owner, accompanied by either the required mental state, under §§ 30.02(a)(1) and (2) . . . or the further requisite acts or omissions, under § 30.02(a)(3)."); *see also Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006) (unlawful entry is gravamen of

14

burglary because offense is complete once unlawful entry is made). Burglary of a habitation may be committed three different ways. *See* Tex. Penal Code § 30.02(a)(1)–(3) (offense of burglary is committed by (1) entering habitation with intent to commit felony, theft, or assault; (2) remaining concealed in habitation with intent to commit felony, theft, or assault; or (3) entering habitation and then committing or attempting to commit felony, theft, or assault); *see also Shaw v. State*, 557 S.W.2d 305, 306 (Tex. Crim. App. 1977), *overruled in part on other grounds by Almanza*, 686 S.W.2d at 174. These different ways are not separate burglary offenses; they are alternative means of committing the single offense of burglary. *Washington v. State*, No. 03-11-00428-CR, 2014 WL 3893060, at *3–4 (Tex. App.—Austin Aug. 6, 2014, pet. ref'd) (mem. op., not designated for publication); *Martinez v. State*, 269 S.W.3d 777, 783 (Tex. App.—Austin 2008, no pet.).

Tracking the indictment in this case, the application paragraphs of the jury charge concerning the burglary offense instructed the jurors that they could convict appellant of burglary of a habitation if they found that she entered the home of Jason Witt, a family member, without his effective consent:

- with intent to commit the felony offense of aggravated assault;

- and attempted to commit or committed the felony of aggravated assault;

- with intent to commit the felony offense of kidnapping;

- and attempted to commit or committed the felony of kidnapping.

The charge, in other words, submitted the four burglary allegations, relating to the different sections of the burglary of a habitation statute, disjunctively. Thus, the jury charge set forth the single,

specific statutory offense of burglary of a habitation and included four alternative manner and means of committing that offense. Alternate manner and means of committing the same offense may be submitted to the jury without violating the right to a unanimous jury verdict. *See Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004) ("The unanimity requirement is not violated by instructing the jury on alternate theories of committing the same offense[.]").

At trial, appellant asserted that the failure to include the jury unanimity instruction denied her the opportunity to have a unanimous verdict on the burglary of a habitation, which was "a violation of [her] rights under the U.S. Constitution and the Texas Constitution due course of law." In this case, however, whether appellant entered Witt's home with the intent to commit aggravated assault or kidnapping, or entered Witt's home and committed (or attempted to commit) aggravated assault or kidnapping, only a single unlawful entry into the home was committed. Therefore, the jury charge instructing the jury to find appellant guilty if it found *either* that she had unlawfully entered the victim's habitation with intent to commit a felony *or* that she had unlawfully entered the victim's habitation and then committed or attempted to commit a felony did not deprive appellant of her constitutional right to a unanimous verdict. The unauthorized entry with intent to commit a felony or the unauthorized entry and the commission (or attempted commission) of a felony were simply alternative methods of committing the same burglary offense. Hence, the trial court did not err by denying appellant's requested jury unanimity instruction as no such unanimity was required.

On appeal, appellant maintains that the failure to instruct the jury that its verdict required unanimous agreement as to the manner and means of committing the burglary of habitation

possibly subjected her to double jeopardy because the predicate offense in two of the paragraphs of the burglary charge (the aggravated assault) was also charged in a separate indictment.[7] *See Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006) (defendant may not be punished for both underlying felony and burglary if burglary allegation is that defendant entered home without consent of owner and then committed underlying felony within home; conversely, substantive felony and burglary by entering home without consent of owner and with felonious intent to commit that substantive felony are two distinct offenses not constituting double jeopardy violation). Although acknowledging that the subsections of the burglary statute are merely alternative manner and means of committing burglary, appellant argues that "under the circumstances" of this case, the lack of unanimity between the statutory subsections, "opened the possibility" that the jury's general verdict resulted in a double jeopardy violation.

However, even had the trial court included the requested unanimity instruction, the double jeopardy "possibility" would not have been resolved. The verdict form for the burglary charge required the jury to return a general verdict: "We, the Jury, find the defendant, [appellant], (guilty or not guilty) of the offense of Burglary of a Habitation." Even had the court included

---

[7] Initially, we note that the record does not reflect that appellant raised her double jeopardy concerns at trial—during the charge conference when requesting the unanimity instruction on the burglary offense or at any other time during trial. *See* Tex. R. App. P. 33.1(a)(1)(A) (to preserve error, party must not only present timely request or objection to trial court but must also state grounds for request or objection "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"); *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) (general or imprecise objection suffices to preserve error "only if the legal basis for the objection is *obvious* to the court and to opposing counsel"); *see also Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 1158 (2015) (point of error on appeal must comport with objection made at trial). Arguably, appellant's complaint on appeal was not properly preserved for appellate review.

appellant's requested unanimity instruction and required the jury to be unanimous as to the manner and means by which appellant committed the burglary, there would be no way of knowing from the general verdict which manner and means the jury was unanimous about. There is no requirement that the jury designate which of the alternate manner and means of committing the specific offense the jurors found to have been proven. Thus, appellant's requested jury unanimity instruction did not address, and certainly did not eliminate, the double jeopardy concern appellant now raises for the first time on appeal. Even with the requested instruction, the "possibility" that the jury's general verdict resulted in a double jeopardy violation still existed. With or without the requested instruction, appellant was in the same position regarding a potential double jeopardy violation.

For that reason, even assuming the denial of the requested instruction was error, which we conclude it was not, we reject appellant's claim that she suffered "some harm" because the trial court denied her jury unanimity instruction. Once again, if jury charge error has been properly preserved by an objection or request for instruction, as in this case, reversal is required if the appellant has suffered "some harm" from the error. *Vega*, 394 S.W.3d at 519. "This means that the trial record must demonstrate that there is some actual harm and not just a theoretical complaint." *Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013). Appellant's contention that she was harmed by the omission of the requested jury unanimity instruction is based solely on the hypothetical possibility of a double jeopardy violation—a wholly theoretical complaint. Because the jury charge submitted four alternative burglary theories, only one of which posed a possible double jeopardy violation, the record fails to demonstrate actual harm. *See Langs*, 183 S.W.3d at 687 ("[W]hen separate theories for an offense are issued to the jury disjunctively, a double jeopardy

18

violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double jeopardy violation and there is sufficient evidence to support that valid theory. The fact that the jury's verdict *could* have relied on a theory that would violate the Double Jeopardy Clause, is not sufficient to show a constitutional violation 'clearly apparent on the face of the record.'"); *Wilson v. State*, No. 05-11-01195-CR, 2012 WL 5504025, at *3 (Tex. App.—Dallas Nov. 14, 2012, pet. ref'd) (not designated for publication) ("When both theories of burglary described above are submitted to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if there is sufficient evidence to support the theory that would not constitute a double jeopardy violation.").

We overrule appellant's second point of error.

### Clerical Error in Judgment

On review of the record, we observe that the written judgment of conviction for the second count of family violence aggravated assault in this case (Count III in appeal number 03-13-00390-CR) contains a clerical error. The judgment states that the "Statute for Offense" is "22.02(a)(1) Penal Code." The statute for the family violence aggravated assault offense as alleged in Count III of the indictment in this case, however, is section 22.02(a)(2) of the Penal Code. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 46.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the incorrect judgment of conviction for the second count of family violence aggravated assault (Count III in appeal number 03-13-00390-CR) to reflect the correct Penal Code section.

19

**CONCLUSION**

Having overruled appellant's two points of error, we affirm the judgments of conviction for the first count of family violence aggravated assault (Count I in appeal number 03-13-00390-CR), the aggravated kidnapping (appeal number 03-13-00391-CR), and the burglary of a habitation (appeal number 03-13-00392-CR). To correct non-reversible clerical error in the judgment of conviction for the second count of family violence aggravated assault (Count III in appeal number 03-13-00390-CR), we modify that judgment as noted above and affirm that judgment of conviction as so modified.

_____
Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

03-13-00390-CR     Affirmed; Modified and, as Modified, Affirmed

03-13-00391-CR     Affirmed

03-13-00392-CR     Affirmed

Filed: July 30, 2015

Do Not Publish

20

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED JULY 30, 2015

## NO. 03-13-00390-CR

**Andria Stanley, Appellant**

**v.**

**The State of Texas, Appellee**

---

**APPEAL FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
BEFORE CHIEF JUSTICE ROSE, JUSTICES GOODWIN AND BOURLAND
AFFIRMED; MODIFIED AND, AS MODIFIED, AFFIRMED --
OPINION BY JUSTICE BOURLAND**

---

This is an appeal from the judgments of conviction entered by the trial court. Having reviewed the record and the parties' arguments, the Court holds that there was no error in the trial court's judgments requiring reversal. Accordingly, the Court affirms the trial court's judgment of conviction for Count I. However, there was error in the judgment of conviction for Count III that requires correction. Therefore, the Court modifies the trial court's judgment of conviction for Count III to reflect that the "Statute for Offense" is "22.02(a)(2) Penal Code." The judgment, as modified, is affirmed. Because appellant is indigent and unable to pay costs, no adjudication of costs is made.

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED JULY 30, 2015

### NO. 03-13-00391-CR

**Andria Stanley, Appellant**

v.

**The State of Texas, Appellee**

## APPEAL FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
## BEFORE CHIEF JUSTICE ROSE, JUSTICES GOODWIN AND BOURLAND
## AFFIRMED -- OPINION BY JUSTICE BOURLAND

This is an appeal from the judgment of conviction entered by the trial court. Having reviewed the record and the parties' arguments, the Court holds that there was no reversible error in the trial court's judgment of conviction. Therefore, the Court affirms the trial court's judgment of conviction. Because appellant is indigent and unable to pay costs, no adjudication of costs is made.

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED JULY 30, 2015

## NO. 03-13-00392-CR

**Andria Stanley, Appellant**

v.

**The State of Texas, Appellee**

---

**APPEAL FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
BEFORE CHIEF JUSTICE ROSE, JUSTICES GOODWIN AND BOURLAND
AFFIRMED -- OPINION BY JUSTICE BOURLAND**

---

This is an appeal from the judgment of conviction entered by the trial court. Having reviewed the record and the parties' arguments, the Court holds that there was no reversible error in the trial court's judgment of conviction. Therefore, the Court affirms the trial court's judgment of conviction. Because appellant is indigent and unable to pay costs, no adjudication of costs is made.